UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **RONNIE ELLIS,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
|                          **v.** | )    **Case No. 1:21-CV-94-SNLJ** |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
|    **Defendant.** | ) |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Ronnie Ellis's application for Disability Insurance Benefits under Title II of the Social Security Act. Plaintiff now seeks judicial review [Doc. 12]. The matter has been fully briefed. As discussed below, the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

**I.      Procedural History**

Plaintiff Ellis was born in 1968. Most recently, he worked operating a welding machine in 2015. Plaintiff protectively filed a Title II application on May 3, 2019 for a period of disability and disability insurance benefits, alleging disability onset beginning October 15, 2015. The claim was initially denied November 15, 2019. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a

1

hearing on August 20, 2020, and the ALJ denied plaintiff's claim in a decision dated October 30, 2020.

## II.     Medical History

Plaintiff's relevant medical history includes treatment for his lower back pain and depression/anxiety. Plaintiff was injured in an accident at work in 2014, resulting in a back surgery and chronic back pain. Plaintiff was also morbidly obese as of November 2017, so he saw practitioners to assist with weight loss. By November 2018, when he had gastric bypass surgery, he had already lost nearly 30 pounds, but his backpain continued to worsen. Following an MRI in September 2019, plaintiff was diagnosed with spondylosis of the lumbar and sacroiliac joint. [Tr. 382.]

Nurse Practitioner Debra Alexander performed bilateral L4-5 facet joint injections on September 2019. Plaintiff reported that the pain abated for only a few hours. During a followup with NP Alexander in November, plaintiff rated his pain at 6/10 and displayed an antalgic gait. Plaintiff had limited range of motion in his lumbar spine, and Alexander ordered a discogram. [Tr. 473.]

Plaintiff saw pain specialist Tyler Ptacek, M.D., in November 2019. He complained of stabbing, aching, and "pins and needles" back pain that radiated down into his legs, especially on the left side. Plaintiff agreed to try a spinal stimulator and to take hydrocodone for pain. [Tr. 491, 494-95.]

Plaintiff returned to Dr. Ptacek on December 4, 2019 for a stimulator trial. Upon plaintiff's return to clinic for followup a week later, he reported a 60 percent

2

improvement to his symptoms during the trial, with no pain in his legs.  They scheduled placement of a permanent spinal stimulator, which was performed on December 24, 2019.  [Tr. 508.]

It is not clear how long plaintiff had relief from the December 24, 2019 spinal stimulator.  On August 10, 2020, plaintiff appeared at his primary care clinician's office for a "check up" and to have "paper work for his disability to be filled out."  The treatment notes from that day state that "he has had back surgery but still struggles with recurrent pain rating 7/10 pain radiating down his left leg."  [Tr. 606.]  Plaintiff's treating clinician, Physician's Assistant Kimberly Essner, notes that "Disability paperwork will be filled out.  I do feel patient is unable to work an 8hr job, lift or perform a strenuous job."  [Tr. 609.]  PA Essner's Medical Source Statement, which was completed on August 10, 2020, reflects the following opinions:

- plaintiff can stand or sit for only 20 minutes at a time, and less than two hours total per workday;
- plaintiff would require frequent position changes, along with use of a cane;
- plaintiff would be off task 25 percent of the workday;
- plaintiff would be incapable of low stress work.
- plaintiff could occasionally twist; rarely stoop, balance, or lift 20 pounds/10 pounds/less than 10 pounds; and never lift 50 pounds, crouch, crawl, or climb

[Tr. 547-48.]

3

At the hearing before the ALJ, plaintiff reported that the spinal stimulator was effective for only about 30 days. [Tr. 95.] He reported that he still has numbness in his left leg and can't clip his toenails or put socks on. [Tr. 96.] Plaintiff apparently did not return to Dr. Ptacek regarding adjusting the spinal stimulator at all, because the last medical record from that practice is a January 2020 surgical follow-up appointment. Plaintiff did say to his counselor in February 2020 that the spinal stimulator "decreased pain in his leg, but nerve pain in back still interfered with his sleep." [Tr. 525.] But plaintiff also said he was "going to give the spinal stimulator a couple more weeks to see how it adjusted and would follow up with doctor if needed." [*Id.*] His May 5, 2020 counseling notes made one mention of "physical pain and difficultly sleeping at times." [Tr. 527.] Later counseling notes did not mention pain, the spinal stimulator, or the need for followup, but they did note at least two camping trips with family in notes dated May 26 and June 22, 2020. [Tr. 529 and 531.] As part of his weight-loss regimen, plaintiff worked his way up to walking a mile and a half five days per week. [Tr. 427-36.]

Plaintiff asserts he is unable to work due to lumbar spondylolisthesis, depression, insomnia, lumbar NHP, lumbar radiculitis, and leg numbness. [Tr. 243.] On his function report dated August 2019, plaintiff states that he cannot put on socks, tie his shoes, clip toenails, or work. He prepares his own meals, does laundry, dishes, vacuums, takes out the trash, and mows the yard. He can drive and go out alone, but he sometimes forgets where he is. He grocery shops, but since overdosing on opioids in 2016, he doesn't like being around a lot of people. [Tr. 254-555.]

4

State agency physician Donna McCall, D.O., concluded that plaintiff could perform light work with additional restrictions including a limitation on overhead reacing bilaterally and no exposure to vibration or hazards.  [Tr. 148-51.]  State agency psychologist Dr. Altomari determined plaintiff could understand and remember short, simple, repetitive instructions; concentrate and persist with short, simple, repetitive tasks as long as not in unusual coordination with others; and interact in an environment that did not require unusually close interaction with the public, supervisors, or coworkers.  [Tr. 151-53.]

The Administrative Law Judge concluded on October 30, 2020 that plaintiff was not under a disability as defined in the Social Security Act.  On April 21, 2021, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

### III.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past

6

relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work

that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

**IV.    The ALJ's Decision**

At Step One, the ALJ found plaintiff met the insured status requirements through the relevant period, and he had not engaged in substantial gainful activity since April 3, 2018, the alleged onset date. At Step Two, the ALJ found plaintiff suffers from the following severe impairments: lumbar spine degenerative disc disease, status post L5-S1 fusion; mild bilateral hip arthropathy; mild multilevel endplate thoracic degenerative changes; depression; and anxiety.  [Tr. 15.]

At Step Three, the ALJ concluded plaintiff does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations.

Next, in Step Four, the ALJ determined plaintiff's RFC.  The ALJ found that plaintiff

8

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he cannot climb ladders, ropes, or scaffolds and can only occasionally climb ramps and stairs. He is limited to occasional stooping, kneeling, crouching, and crawling, and frequent balancing. The claimant is limited to performing simple routine tasks and can perform work with production expectations, but the work must not be at a fast pace such as an assembly line. He is further limited to work that requires only occasional changes in the work setting, and he can have occasional interaction with co-workers and the public.

[Tr. 18.] As part of this determination, the ALJ found that the objective evidence does not corroborate the plaintiff's allegations.

Based on this RFC determination, the ALJ determined plaintiff is unable to perform his past work as a weld machine tender.

At Step Five, the ALJ analyzed whether plaintiff can successfully adjust to other work. The ALJ relied on vocational expert ("VE") testimony to determine whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and RFC. The VE testified the plaintiff would be able to perform the requirements of other jobs, including dining attendant, janitorial, and bakery worker.  The ALJ then found these jobs exist in significant numbers in the national economy and concluded plaintiff is not disabled.

## V.    Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a

9

reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## VI.     Discussion

Plaintiff contends that the ALJ's decision was not supported by substantial evidence because she did not express the RFC in a function-by-function manner and because she mischaracterized the record to support the RFC and dismiss the medical opinion of plaintiff's treating physician's assistant, Kimberly Essner.

### A.     The RFC

The RFC is "the most a claimant can still do despite his or her physical or mental limitations." *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004) (internal quotes

10

omitted). The ALJ bears the primary responsibility for assessing the RFC based on all of the relevant evidence. *Pearsall v. Massanari*, 274 F.3d 1211 (8th Cir. 2001). An RFC determination will only be upheld if it is supported by substantial evidence of record. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

Plaintiff points out that Social Security Ruling 96-8p requires that the ALJ include in the decision "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996). SSR 96-8p further states that the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." 1996 WL 374184, at *1. Specifically, the RFC should address the ability to sit, stand, walk, push, and pull. *See* 20 C.F.R. § 416.945(b). Only after doing so may the RFC be expressed by exertional level. *Id.* Plaintiff contends that, despite this instruction in the Commissioner's Social Security ruling, the ALJ did not address plaintiff's limitations in standing or walking before concluding that Ellis could perform light work. Plaintiff, relying on *Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999), asserts that the ALJ thus erred and that remand is required.

Plaintiff relies on *Pfitzner* because, in that case, the Eighth Circuit remanded where the ALJ had not adequately explained the claimant's RFC. The ALJ had recounted relevant medical evidence and concluded that the claimant retained the RFC to return to his past relevant work as a truck driver. However,

11

> the ALJ never specifically articulated Pfitzner's residual functional capacity, rather he described it only in general terms. Near the end of his decision, for example, the ALJ stated that Pfitzner "retain[ed] the residual functional capacity to perform a wide range of medium work." (Rec. at 29.) In his findings, the ALJ stated that Pfitzner retained the "capacity to perform work related activities except for work involving limitations described in the body of this decision." (*Id.* at 30.) Pfitzner takes issue with the ALJ's treatment of his residual functional capacity. Specifically, Pfitzner contends that the ALJ's fact-findings on this issue are incomplete or nonexistent. We agree.

*Pfitzner*, 169 F.3d at 568. The Eighth Circuit went on to state that "An ALJ's decision that a claimant can return to his past work must be based on more than conclusory statements. The ALJ must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affect the claimant's residual functional capacity." *Id.* (citation omitted). Notably, the *Pfitzner* case involved a determination that the claimant could return to his previous job, which is a circumstance we do not have here. Further, in *Pfitzner*, the ALJ appears not to have included any details in the RFC except that he could "perform a ride range of medium work." *Id.* The ALJ "articulated only the outermost contours of Pfitzner's" RFC." *Id.* The Eighth Circuit thus concluded that a conclusory determination without specific findings does not constitute substantial evidence that the claimant can return to past work. *Id.*

Although plaintiff here argues that the ALJ erred the same way as the ALJ in *Pfitzner*, this Court disagrees. Plaintiff's RFC, as articulated above, includes specific findings. Plaintiff argues that the RFC is deficient because it does not include a standing and walking limitation, but the "light work" limitation in the RFC includes a standing and

12

walking limitation. "The full range of light work requires standing or walking, off an on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251 (Soc. Sec. Admin. Jan. 1, 1983). The government correctly maintains that the RFC did include such a limitation, and that the ALJ supported her conclusion by noting, among other things, that the plaintiff walked up to a mile and a half for exercise. As long as substantial evidence in the record supports the ALJ's decision, this Court may not reverse it even if substantial evidence also exists that could support a different outcome. *See Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). This Court's role is to review the record to ensure an ALJ did not disregard evidence or ignore potential limitations. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018). The ALJ here did articulate plaintiff's RFC in a function-by-function manner, and her failure to mechanically list and reject every possible limitation is not error. *Id.* (rejecting plaintiff's argument that SSR 96-8p requires an ALJ to "mechanically list and reject every possible limitation.").

    **B.    Mischaracterization of evidence**

Plaintiff next takes issue with the ALJ finding plaintiff's diagnostic imaging and clinical examination findings to be "mild." [Tr. 19, 21, 23.] Plaintiffs asserts his lumbar spine diagnostic imaging findings were not described as "mild" by any medical professional, citing to the August 2019 CT scan and September 2019 lumbar x-ray. Plaintiff explains that the latter scan revealed foraminal stenosis at L3-4 and L4-5, and anterolisthesis of L5 and S1. [Tr. 392.] As a result, plaintiff was diagnosed with

13

spondylosis and recommended for bilateral blocks of the L4-5 facets and instructed he was eligible for adjacent segment lumbar fusion surgery. [Tr. 393.] Plaintiff asserts that this does not support the ALJ's determination that findings were "mild."

In fact, the medical records did state, with respect to the imaging reviews, that there was "mild thoracolumbar dextroscoliosis" and "mild bilateral hip arthropathy." [Tr. 392.] The surgeon also described plaintiff's anterolisthesis as "stable." [Tr. 392.] The September 2019 x-ray noted "no hardware failure or acute fracture" and "no segmental instability" [Tr. 386.] Plaintiff's October 2019 lumbar CT scan noted "no recurrent disc herniation or central canal stenosis," and his October 2019 lumbar discography finding stated plaintiff "does not have discogenic pain." [Tr. 483-84, 652-53.] It was reasonable for the ALJ to describe the lumbar imaging findings as mild based on the language used by plaintiff's own providers. As to his thoracic and hip imaging, Plaintiff acknowledges such findings were mild. [Doc. 12 at 10.] With respect to clinical examination findings, it was again reasonable for the ALJ to describe the findings overall as mild; as detailed above, the findings were mostly normal and the ALJ noted consideration of the abnormal findings. [Tr. 19-21.] Thus, the ALJ did not mischaracterize the evidence in describing findings as mild in nature.

### C.   PA-C Essner's Opinion

Finally, plaintiff argues that the ALJ's analysis of PA-C Essner's opinion was not supported by substantial evidence. Plaintiff here again relies on the assertion that the ALJ mischaracterized the evidence discussed above, but this Court has found otherwise.

In addition, plaintiff argues that the ALJ's reliance on the fact plaintiff reported walking a mile and a half a day for exercise was "mistaken." Plaintiff asserts that he had "significant difficultly" with walking and that walking such a distance was "not inconsistent" with Essner's opinion because Essner did not opine that plaintiff was "bedridden." [Doc. 12 at 13.] The ALJ's consideration of plaintiff's reported walking ability was not inappropriate. Plaintiff's medical records show that he steadily increased his daily walking regimen to lose weight for his spinal implant. Such an ability to walk for exercise is significant physical activity that is not indicative of a person who requires pronounced walking limitations in the work setting.

Ultimately the ALJ determined that plaintiff's reported symptoms were not fully reflected by the record. Plaintiff complains that the ALJ failed to acknowledge that plaintiff testified the spinal cord stimulator's 70% pain relief was only effective for 30 days. [Doc. 12 at 11.] The record does not support that testimony. Plaintiff's last visit with his neurosurgeon's practice was in January 2020 for a wound-check/followup appointment. He later told his counselor that he was doing well and, in February 2020, he reported that he was "going to give the spinal stimulator a couple more weeks to see how it adjusted and would follow up with doctor if needed." [Tr. 525.] Although he reported on May 5, 2020 that the "only issues [he] had recently were physical pain and difficulty sleeping at times due to the pain," he did not mention the spinal stimulator, and on May 26 and June 22 mentioned that he was taking family camping trips. Plaintiff appears not to have sought medical care following the January 2020 appointment until his

15

August 2020 appointment with PA-C Essner for the purpose of filling out disability paperwork. His hearing testimony was incongruous with his failure to follow up with Dr. Ptacek or seek other treatment. Plaintiff's functions report also indicates he mows the lawn and does other household chores.

Plaintiff also argues that the ALJ improperly relied on "an outdated opinion from July 2015," which is a physical therapy functional capacity evaluation. That evaluation helped the ALJ understand plaintiff's physical capabilities before the alleged onset date, and the ALJ did not rely on it to the exclusion of other evidence. As the ALJ indicated, plaintiff's lifting capacity improved from the 2015 evaluation to 2019.

Finally, plaintiff asserts the ALJ found Dr. McCall's opinion partially persuasive but did not explain the discrepancy between McCall's standing and walking limitation of six hours per day and the RFC. As already indicated, however, the RFC limits plaintiffs to "light work," which requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. *See* SSR 83-10.

## VII. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint [Doc. 1] is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this  26th day of September, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE